The State, *ex rel.* McCalla, *v.* The Burnsville Turnpike Company *et al.*

No. 10,850.

THE STATE, EX REL. McCALLA, *v.* THE BURNSVILLE TURN-
PIKE COMPANY ET AL.

MANDAMUS.—*Issue of Fact.—Right of Trial by Jury.*—An issue of fact, in
mandate, must be tried by jury if either party demands it, the proceed-
ing being at law, and not in equity

From the Bartholomew Circuit Court.

*J. C. Orr*, for appellant.
*N. R. Keyes*, for appellees.

NIBLACK, J.—This was an application in the name of the
State, and on the relation of Charles McCalla, for an alterna-
tive writ of mandate against the Burnsville Turnpike Com-
pany, Joel S. Davis, William H. Hunter and John H. Red-
denbaugh, Davis being the president, Hunter the secretary,
and Reddenbaugh the treasurer, of that company.

The complaint averred that the defendant, the Burnsville
Turnpike Company, was a corporation organized under the
laws of Indiana, and engaged in operating a turnpike road
in Bartholomew county ; that it was the duty of the defendant,
the secretary of said company, to collect the moneys due said
company from the shareholders thereof, to issue certificates of
stock to the shareholders, and to transfer on the books of said
company, in accordance with the by-laws thereof, any and
all shares of stock to the name and credit of the actual and
lawful owner thereof on the surrender of the certificate of
said stock ; that in July, 1877, one Isaac Davis subscribed
for four shares of the capital stock of said corporation at
$50 per share, on the terms offered by said company to wit:
Said Davis as such subscriber was required to pay for said
four shares of stock in five instalments of $40 each, the first
instalment to be paid in cash at time of subscription, and the
remaining instalments to be paid in one, two, three and four
years from time of subscription ; that the said Isaac Davis,
after having paid the first instalment, died, and his widow,

The State, *ex rel.* McCalla, *v.* The Burnsville Turnpike Company *et al.*

Nancy E. Davis, took said stock from his estate; that on August 13th, 1879, the second and third of the instalments on said shares being due and unpaid, the plaintiff's relator, at the request of Nancy E. Davis, the then owner, paid the instalments then due, and said Nancy E. Davis executed her notes for the remaining instalments, on which the relator became surety; that the shares were then transferred to her, said Nancy E. Davis, and she received a certificate thereof; that thereafter it was agreed between said Nancy E. Davis and the relator that the relator should pay said Nancy $40 in cash and assume the payment of her notes to the company and she would assign and transfer the shares and the certificate thereof to relator; that said relator paid said Nancy the $40, and she transferred and assigned and delivered to him the said shares and the certificate thereof, and that relator paid the first of the notes which he assumed to pay when it became due; that the other note which relator assumed to pay was not yet due, but he was able and willing and ready to pay it when due; that the relator is the legal and equitable owner of said shares, and in the rightful possession of the certificate thereof, and entitled to have the said shares transferred to him on the books of said corporation; that relator on the 10th day of March, 1881, in accordance with the by-laws of said company and requirements of said certificate of said shares, offered to and did surrender to the said company and its officer, the secretary, and thereupon demanded of said officers of said company and the said secretary in particular that said shares be transferred on the books of said corporation to the name of relator, but said officers and said secretary and each of them refused and still refuse to transfer said shares to relator on said company's books, to relator's great injury. Wherefore plaintiff prayed an alternative writ of mandate commanding the said Burnsville Turnpike Company, and the said officers thereof, and said secretary in particular, to perform said acts of transfer of said stock on the

books of said corporation to this relator, so wrongfully omit-
ted and refused as aforesaid, or to show cause why they should
not be compelled to perform the same by a peremptory writ,
and that plaintiff have all other relief in this behalf necessary.

An alternative writ was accordingly issued, to which the
defendants made return in three paragraphs.

The first paragraph was held to be sufficient upon demur-
rer, but demurrers were severally sustained to the second and
third paragraphs.

The first paragraph of the return for answer charged that
it was agreed between McCalla, the relator, and the above
named Nancy E. Davis, that said McCalla should advance the
money necessary to pay off the indebtedness against the stock
and hold the certificate thereof, and when the money paid on
the stock by said McCalla should be refunded to him, he should
return the certificate to said Nancy; that said McCalla ad-
vanced the money, and said Nancy delivered to him the cer-
tificate as security for the advancement; that the stock re-
mained on the books of the company in the name of said
Nancy E. Davis, and she performed the functions of a stock-
holder in relation thereto; that in March, 1881, said Nancy,
at a public sale of her effects, offered the said shares of stock
for sale, and the Burnsville Turnpike Company bought the
shares at said sale, and before the commencement of this ac-
tion tendered to McCalla $170 in full of the amount he had
paid for said Nancy thereon, which sum the defendants brought
into court for the said McCalla.

The plaintiff replied in general denial of the facts con-
tained in this paragraph of return. When the cause was called
for trial, the relator, in his own behalf, as well as on behalf
of the State, demanded that a jury be impanelled to try the
matters in controversy between the parties, but the court
overruled the relator's demand, and proceeded with the trial
of the cause without the assistance of a jury. After hearing
the evidence, the court made a finding for the defendants, and,

over a motion for a new trial, refused to award a peremptory writ of mandate.

Complaint is first made of the refusal of the circuit court to submit the cause to a jury for trial, and to the question raised by that decision the efforts of counsel have been principally directed.

The writ of mandamus is, in this country, classed amongst the extraordinary legal remedies. It was originally a prerogative writ issued only from the court of king's bench, a common law court, where the sovereign was considered to be personally present, to prevent the failure of justice, and to enforce the performance of a duty in which the complaining party had some interest. It was awarded only where there was no other adequate legal remedy, and the granting or refusing the writ was a matter resting in the sound discretion of the court.

While in England, and even in this country, this writ still retains some of its prerogative features, various statutory enactments have so far modified it as to place the proceedings, necessary to secure its benefits, very much upon the footing of an ordinary action. 5 Wait Pr. 548; 4 Wait Actions and Def. 357; 3 Bouvier Institutes, 93.

In the first section of his work on Extraordinary Legal Remedies, High says: " The modern writ of mandamus may be defined as a command issuing from a common law court of competent jurisdiction, in the name of the State or sovereign, directed to some corporation, officer, or inferior court, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law. In the specific relief which it affords, a mandamus operates much in the nature of a bill in chancery for specific performance, the principal difference being that the latter remedy is resorted to for the redress of purely private wrongs, or the enforcement of contract rights, while the former generally has for its object the performance of obligations arising out of

official station, or specially imposed by law upon the respondent." See, also, section 5 of the same work.

Notwithstanding the analogy existing between the relief sometimes afforded by writs of mandamus and the object sought to be attained by certain suits in chancery, the fact nevertheless remains that proceedings in mandamus are of common law origin, and that the writ of mandamus is a common law remedy. 3 Blackstone's Com. 109.

In the case of *Brower* v. *O'Brien*, 2 Ind. 423, this writ was held to be a civil remedy. Section 1167, R. S. 1881, confers upon the Supreme Court and the circuit courts of this State power to issue writs of mandate, which is, in fact, but another name for writs of mandamus.

Section 1171 of the same statutes provides: "Whenever a return shall be made to any such writ, issues of law and fact may be joined; and like proceedings shall be had for the trial of issues and rendering judgment as in civil actions."

Section 1172 further provides: "In case a verdict shall be found for the plaintiff, * * or if judgment be given him, he shall recover damages as in an action for a false return, * * and a peremptory writ shall be granted without delay."

In proceedings like the one before us, the alternative mandamus stands as the complaint, and the return constitutes the answer. *Board, etc.,* v. *State, ex rel.,* 61 Ind. 379; *Gill* v. *State,* 72 Ind. 266; *Potts* v. *State, ex rel.,* 75 Ind. 336; *Pfister* v. *State, ex rel.,* 82 Ind. 382; *State, ex rel.,* v. *Board, etc.,* 92 Ind. 133; *Matter* v. *Stout,* 93 Ind. 19; 5 Wait Prac. 577.

As deducible from the authorities, it may be accepted as an established rule of proceeding, that when the facts are admitted, the relator's right to a peremptory mandamus becomes a question of law, to be disposed of upon motion, and in the sound discretion of the court, but that where an issue of fact has been formed upon the return, such issue must be tried and determined before final judgment can be rendered.

Wait's Practice, already cited, in vol. 5, and at page 590, says: "After an alternative writ is granted, a return made

thereto and issues of facts joined thereon, the case becomes an action under the code and is not a special proceeding. *People* v. *Lewis*, 28 How. 159; S. C. affirmed, mentioning this point, 28 How. 470; 3 Abb. Ct. App. 537, and the issues involved in the cause are disposed of as in personal actions. In case of disputed facts upon the pleadings, those questions must, on proper issue made, go to the circuit for trial. *People* v. *Commissioners, etc.*, 7 Wend. 474." The doctrine thus stated is equally applicable to proceedings for mandamus in this State, the code of New York, to which reference is made, being similar to ours on the subject of issuing and enforcing writs of mandamus. When, therefore, under our code, as in this case, an issue of fact is found upon the matters contained in the return to an alternative writ of mandate, it stands for trial as in an ordinary civil action in which a jury may be demanded by either party. The circuit court, consequently, erred in overruling the relator's demand for a jury, and as the error is one for which the judgment will, in any event, have to be reversed, we will not now consider some other questions referred to in argument.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Filed Oct. 7, 1884.