ADVISORY BOARD OF WASHINGTON TOWNSHIP
*v.* THE STATE, EX REL. WHALEY ET AL.

[No. 20,286.   Filed March 7, 1905.]

1. STATUTES.—*Construction.*—*Former Legislation.*—In the construction of statutes in reference to education and the common schools it is proper to consider all prior constitutional and statutory enactments relating thereto. p. 298.

2. SCHOOLS.—*Government.*—The district is the basis of the common school system. p. 299.

3. SAME.—*Houses.*—*Teachers.*—*Duty to Provide.*—It is the duty of the township trustee to provide buildings, furniture, appliances and teachers for the schools. p. 299.

4. SCHOOLS.—*Abolishing School District.—Township Advisory Board.*—The township advisory boards have no power by refusing to appropriate money for the erection of a schoolhouse to abolish a school district. p. 300.

5. STATUTES.—*Construction.—Township Advisory Board Law.*—The act of 1899 (Acts 1899, p. 150) creating township advisory boards must be construed *in pari materia* with other statutes on such subject-matter. p. 301.

6. SCHOOLS.—*Houses.—Trustee.—Advisory Board.*—It is the duty of the trustee to locate schoolhouses and build same and the advisory board has the right to reject bids for the erection of a schoolhouse only when same are not fair nor reasonable, and it can not lawfully reject bids in order to defeat the establishment of a district or to abolish a district. p. 301.

7. MANDAMUS.—*Township Advisory Board.—Appropriation for Schoolhouse.*—A township advisory board may be compelled by mandate to appropriate money for the erection of a schoolhouse. p. 302.

8. SAME.—*Good Faith.—Defense.*—It is no defense for a township advisory board that it acted in good faith and believed it to be unnecessary and a waste to appropriate money for the erection of a schoolhouse. p. 303.

From Newton Circuit Court; *Charles W. Hanley*, Judge.

Petition for writ of mandate by the State of Indiana, *ex rel.* James A. Whaley and others against the Advisory Board of Washington Township. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*William Darroch*, for appellant.

*Frank A. Comparet, John Higgins* and *William Cummings*, for appellee.

MONTGOMERY, J.—The questions presented by the assignment of errors upon this appeal are the sufficiency of facts alleged in the alternative writ of mandate to require appellant as the advisory board of Washington township, Newton county, Indiana, to meet at the office of the township trustee and make such order as will be necessary to enable such trustee to rebuild a certain schoolhouse in one of the school districts of said township, and the sufficiency of facts alleged in an affirmative paragraph of answer or return to the alternative writ, to avoid the same.

Advisory Board, etc., *v.* State, *ex rel.*

It is shown by the alternative writ of mandate that in November, 1902, and prior thereto, school district number five was one of the existing districts for school purposes in said Washington township, and was provided with a good frame school building, completely furnished, in charge of a teacher, and school was in session, with an average daily attendance of more than twelve pupils, and that under these circumstances, on the — day of November, 1902, said schoolhouse, with its furniture, was destroyed by fire, and that the building was insured against loss by fire to the amount of $250, which sum the trustee has since collected and still retains; that upon the 9th day of May, 1903, after proper notice given, a school meeting was held in said district for the purpose of considering the matter of rebuilding said schoolhouse, and, in pursuance thereof, a petition directed to the trustee was prepared, and signed by all the voters of said school district, and by thirty-two other voters of said township, requesting him to rebuild said schoolhouse. This petition was presented to the trustee, and by him denied. An appeal from the trustee was duly taken to the county superintendent, and, upon a hearing of the matter before him, the decision of the trustee was reversed, the prayer of the petition granted, and the trustee directed to proceed with the erection of the new building to take the place of the one burned in said district; that at the annual meeting of said advisory board in September, 1903, the trustee asked said board to make an appropriation not exceeding $625 to construct a new school building for said district, as prayed for in said petition, in accordance with plans and specifications submitted, and the board refused to make any appropriation for that purpose, and that said township at the time had no outstanding indebtedness; that at and during all the times aforesaid said district was one of the existing school districts of said township, and that it had never been abandoned either by the voters thereof or by the township trustee, and that within said district there

were eighteen children of school age, needing the advantages of a common-school education, and no school, or building suitable for school purposes, and said children were compelled to go long distances to school in other districts, which districts already had more pupils than they could accommodate. It was further averred that the township trustee was ready and willing to do his full duty in the premises.

1.   The ordinance for the government of the Northwest Territory (Art. 3) declared, that, "Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." The Constitution of the State adopted in 1816 (Art. 9, §2), recited that knowledge and learning, generally diffused through a community, is essential to the preservation of a free government, and provided that "It shall be the duty of the General Assembly, as soon as circumstances will permit, to provide by law, for a general system of education, ascending in a regular gradation from township schools to a state university, wherein tuition shall be gratis, and equally open to all." The Constitution of 1851 (Art. 8, §1), makes the same declaration as to the necessity for the general diffusion of knowledge and learning, and provides that "It shall be the duty of the General Assembly  *  *  *  to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all."

In the construction and application of all laws upon this subject, it is necessary that we keep in mind these basic principles and provisions of our government. To the end that opportunities for a common-school education might be equally open to all, it was very early provided by law that township trustees should divide their townships into proper school districts, in such manner as should be "most convenient for the population and neighborhoods," and so as to promote the interests of the inhabitants of the townships

concerned.  A map or plat of the districts thus made was required to be filed with the auditor of the county, and a number assigned to each district, and thereafter a district could be changed only on petition of a majority of the voters thereof.

2.   The laws have been modified from time to time, but the school district has remained as the basis of the general system of common-school education.   It still remains so, and the latest enactment on the subject provides:   "That no township trustee shall abandon any district school in his township until he shall have first procured the written consent therefor signed by a majority of those legal voters, who are entitled to vote for township trustee in such district: Provided this act shall not apply to schools which have an average daily attendance of twelve pupils or fewer."   Acts 1901, p. 159.

3.   The duty of providing the necessary buildings, furniture, apparatus, appliances and teachers has at all times rested upon the trustees; and the latest enactment upon this subject enjoins upon them the same duty, to wit:   "That the school trustees shall take charge of the educational affairs of their respective townships, towns and cities.   They shall employ teachers, establish and locate conveniently a sufficient number of schools for the education of the children therein, and build, and otherwise provide, suitable houses, furniture, apparatus and other articles and educational appliances necessary for the thorough organization and efficient management of said schools," etc.   §5920 Burns 1901, Acts 1901, p. 514.   Provision is also made for a meeting of the voters of a school to petition the trustee for the erection of a schoolhouse, and for an appeal from the trustee to the county superintendent; and the decision of the superintendent on "all local questions relating to the legality of school meetings, establishment of schools, and the location, building, repair or removal of schoolhouses, or transfers of

persons for school purposes, and resignation and dismissal of teachers, shall be final." §6028 Burns 1901, §4537 R. S. 1881.

These quotations from the Constitution and laws of our State show the preëminent importance which has been given to the subject of education and the general diffusion of knowledge among the people from the time of the organization of the state government. A specific duty of the highest concern to the welfare of the State—that of providing and maintaining convenient schools for the education of the children of the State—has been for years, and still is, enjoined upon school trustees.

A trustee can properly perform his duty with respect to the convenience of the children only by maintaining a school in each school district heretofore created in pursuance of law, and now existing. It has already been shown that a trustee, in the exercise of his own discretion, can not abandon a school having an average daily attendance of more than twelve pupils. The abandonment of such a school can be accomplished only by the trustee with the written consent of a majority of the legal voters of the school district, and subject them to the overruling judgment of the county superintendent on appeal. In this particular instance the entire voting population of the district, and more than thirty other voters of the township, the county superintendent, by a judgment lawfully pronounced, and the township trustee, all concur in a demand for the rebuilding of the schoolhouse.

4. Can that be done indirectly which could not be directly done? Can the township advisory board virtually abolish a school district, annul a school, and deny to pupils, more than twelve in number, equal and convenient school privileges, by refusing to make an appropriation or to authorize a loan to rebuild in an existing district a schoolhouse accidentally destroyed by fire? We have no hesitancy in saying that township advisory boards have not been

clothed with any such power. If these boards have power thus to abolish or abandon one district school, they might by the same right abandon all, in a spirit of parsimony. If it should be held that the legislature intended to clothe these boards with such far-reaching power, a more serious question, as to whether or not the act infringed upon the constitutional provisions above quoted, might arise.

The General Assembly of 1901 (Acts 1901, p. 470) passed an act requiring the attendance at school of children between the ages of seven and fourteen years. We can not presume that less convenient facilities and accommodations are to be afforded at the very time when stricter requirements with regard to attendance are to be enforced.

5. The General Assembly of 1899, by "an act concerning township business" (Acts 1899, p. 150), created the township advisory boards, and gave them all their powers. This act is to be construed in connection with all other statutes relating to the same subject-matter. It was enacted, not to overthrow, but to be applied and to work in harmony with, the State's long-existing plan and system for the control and management of the common schools. The act does not, in express terms, or by reasonable intendment or implication, confer upon advisory boards the power to overrule the judgment of the township trustee and county superintendent as to the necessity or advisability of rebuilding a schoolhouse in use for school purposes when destroyed by fire.

6. Section six of the act provides for special sessions of the board, at which, in case of an existing emergency, the trustee may be authorized to borrow a sum of money to meet such emergency. Section nine of the act provides, among other things: "If a trustee finds it necessary to erect a new schoolhouse, he shall procure suitable specifications therefor, to be used by the bidders in bidding and in the construction of such house. * * * The advisory board shall attend the letting. * * * All bids shall be in writing and be opened

and read publicly at the time and place fixed in the notice. The trustee may take time to examine and satisfy himself as to which is the lowest and best bid, and shall advise with the advisory board thereon; and said board is hereby empowered to reject any and all bids. * * * When a bid is accepted, a proper contract shall then be reduced to writing for such building * * * and signed by the successful bidder and the trustee."

It is thus shown that upon the subject of building school-houses the judgment of the board is not paramount, but is, as its name implies, "advisory" to that of the trustee. The board may reject bids, but this can not mean that bids may be arbitrarily rejected to defeat the purpose of the trustee, but only that such bids may be made fair and reasonable. The primary object and purpose of the act is to secure economy, honesty, and fidelity in the conduct of township business, but no intent is manifested to deprive the people of convenient and ample facilities for the advancement of learning and the general diffusion of knowledge. Whether, in matters affecting only local interests, and concerning solely the municipality for which it acts, the advisory board may exercise an absolute discretion, we do not decide. The subject-matter now under consideration is not of that class, but is of wider interest and of general concern to the State. In the expenditure of public moneys for school purposes there is a wide range between economy and profligacy for the legitimate exercise of the supervising judgment of these boards. No question of economy or extravagance in the erection of the proposed building is involved in this appeal. It must be assumed that the proposed building is fairly adequate and reasonably suitable to the needs of the school, and within the bounds of economy.

7. It has been held that mandamus will lie to compel county commissioners to keep public bridges in repair, and that the duty to repair extends so far as to require the re-building of a bridge forming an essential part of an exist-

ing highway, when it has been substantially destroyed. *State, ex rel., v. Board, etc.* (1881), 80 Ind. 478, 41 Am. Rep. 821. It is clear, upon the facts shown by the alternative writ, that the township trustee, if unwilling to do so, might be compelled to perform the duties devolving upon him with regard to rebuilding the schoolhouse in question. *Trager v. State, ex rel.* (1863), 21 Ind. 317; *Carnahan v. State, ex rel.* (1900), 155 Ind. 156. The trustee, however, has done, and is willing to do in the future, all that is required of him to secure the rebuilding of the schoolhouse. It is our conclusion that the duty is clearly imposed upon appellant, as an advisory body to the trustee's office, to make such order, either by directly appropriating the money, or by authorizing the trustee to borrow the necessary amount, to enable him to rebuild and refurnish the schoolhouse for said district, and that performance of this duty may be enforced by proceedings in mandamus, and that the alternative writ herein is sufficient in its averment of facts, and no error was committed in overruling appellant's demurrer to the same.

8. Appellant's second paragraph of answer argumentatively denied some of the allegations of the alternative writ; averred the good faith of appellant in refusing to make the appropriation requested, and its belief that the rebuilding of said schoolhouse is unnecessary and would be a waste of public money. What has been said in discussing the alternative writ discloses the infirmity of this alleged defense. It follows that the demurrer for want of facts was properly sustained to this paragraph of answer.

The judgment is affirmed.

Gillett and Monks, JJ., dissent.