THE STATE OF INDIANA, EX REL. GOOD, *v.* HOWARD, TRUSTEE, ET AL.

[No. 21,529.   Filed June 21, 1910.]

1. SCHOOLS.— *Construction of Houses.— Mandamus.— Trustees.—* A petition to mandate a township trustee to build a schoolhouse alleging that such trustee would build such house but for the obstinacy of his advisory board which refuses to appropriate the money, though requested so to do by the trustee, is bad for the reasons (1) that such trustee has not refused to do the thing desired, (2) that a duty, as well as the ability, to construct is not shown, and (3) that no appropriation of the necessary money, nor the consent to the creation of the necessary debt, is shown. p. 360.

2. SCHOOLS.— *Construction of House.— Conditions.— Mandamus.— Trustees.—*To mandate a township trustee to build a schoolhouse it must be shown that he refused to act, that the necessary appropriation was made, or that the board on finding that an indispensable necessity existed, granted permission to create an indebtedness for its construction.   p. 362.

3. SCHOOLS.—*Construction of Houses.—Advisory Boards.—Mandamus.—*A return to a petition to mandate a township advisory

board to appropriate $20,000 to construct a school building, alleging that there were in the district not to exceed ninety pupils, that the number was constantly growing less, that a suitable building could be constructed for $10,000, and that such board refused, in good faith, to appropriate for the reason that it would be a waste of public money, is sufficient.  pp. 362, 367.

4.  SCHOOLS.—*Location of Buildings.—Trustees.*—It is the duty of township trustees to establish and locate schoolhouses, and to provide suitable furniture, apparatus and other appliances necessary for the efficient conduct of the schools.  p. 363.

5.  SCHOOLS.—*Districts.—Changing of.*—The duty of changing school districts rests upon township trustees and county superintendents.  p. 363.

6.  SCHOOLS.—*Contracts for Construction of Houses.—Duty of Advisory Boards.*—Advisory boards may reject bids for the construction of schoolhouses.  p. 364.

7.  SCHOOLS.—*Relocating.—Removing.—Trustees.*—A township trustee, with the consent of a majority of the patrons affected, and the county superintendent, may remove and relocate a schoolhouse.  p. 364.

8.  SCHOOLS.—*Abandonment.—Reëstablishing.*—A township trustee, on petition of two-thirds of the legal voters of the district affected, can and must reëstablish a district school.  pp. 365, 368.

9.  SCHOOLS. — *Buildings. — Character of. — Trustees. — Advisory Boards.*—It is the duty of the township trustee, subject to an appeal to the county superintendent, to determine the character of school buildings to be erected, but his decision must be reasonable, or the advisory board may properly refuse to appropriate the money required to build such houses, or to accept any bids for the construction thereof.  p. 365.

10.  STATUTES.—*Construction.—In Pari Materia.*—All statutes concerning the same subject-matter should be construed together.  p. 366.

11.  SCHOOLS.— *Houses.— Construction.— Suitability.— Advisory Boards.*—Where three school districts had been consolidated, and the trustee petitioned the advisory board for money with which to erect a suitable building, but before an action in mandamus was filed to compel such appropriation, two of such districts had filed petitions signed by more than two-thirds of the legal voters thereof, for the reëstablishment of their schools, and such schools had been accordingly reëstablished, the advisory board properly refused a subsequent request for an appropriation.  p. 368.

From Boone Circuit Court; *Meade Vestal,* Special Judge.

Action by The State of Indiana, on the relation of George

Good, against Charles C. Howard, as trustee of Marion School Township of Boone County, and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Shelby & Worley* and *Kent & Ryan,* for appellant.

*B. S. Higgins, Terhune & Adney* and *Hanly, McAdams & Artman,* for appellees.

HADLEY, J.—This is an action by appellant, a citizen taxpayer and school patron, for a writ of mandate against the trustee of Marion township, of Boone county, and members of the township advisory board requiring such board to enter in the proper records a finding that an indispensable necessity exists for the building of a new graded school building in district number thirteen, and an order authorizing the trustee of said township to issue the warrants or bonds of said school township to the amount of $20,000, to raise money with which to erect such building, and also requiring the trustee of said school township to proceed without delay to have constructed a new graded school building in said district in accordance with the plans and specifications already adopted and on file with said trustee. Trustee Howard and the advisory board each separately demurred to the petition and alternative writ for insufficiency of facts, each of which demurrers was overruled. Each then filed a separate return to the alternative writ. Plaintiff filed a demurrer to the second paragraph of the separate return of the advisory board, which demurrer was overruled, and plaintiff electing to stand by his demurrer, judgment was rendered against him that he take nothing by his action. Exceptions were reserved to all adverse rulings, and cross-error assigned on the overruling of the demurrers to the complaint and writ.

As to trustee Howard's demurrer to the petition and alternative writ, there is no semblance of a cause of action stated against the trustee, and his demurrer should have been sustained. Among many other

things, it is alleged in the petition and alternative writ, "that said trustee and C. W. Stoops, a member of said advisory board, have been and are willing to do all that is proper and legal in the premises in order to build said new graded school building, but they are prevented from so doing by reason of the unlawful and arbitrary acts" of the majority of the advisory board. It is further averred that there is no money available for the building of said schoolhouse, and that a majority of the advisory board, though requested so to do at one regular annual meeting, and at one special meeting called for that purpose by the trustee, failed and refused to make a finding that an indispensable necessity existed for the building of said schoolhouse, and failed and refused to make an order authorizing said trustee to issue township warrants or bonds to raise money with which to construct said building, and failed and refused to take any favorable action towards the construction of said building.

These averments show that mandate will not lie against the trustee, for the reasons that (1) the court will not entertain an action brought against an officer to compel him to do a thing that he remains willing to do and would do if he had the power; (2) the writ should be denied, because it does not clearly appear from the petition and alternative writ that it is defendant's duty to construct the schoolhouse, and that he has the means and ability of performance (*Dunten* v. *State, ex rel.* [1909], 172 Ind. 59; *State, ex rel.*, v. *Anderson* [1908], 170 Ind. 540; *State, ex rel.*, v. *John* [1908], 170 Ind. 233) ; (3) a trustee has no authority of law to expend the money of his township, or contract a debt in its behalf, for the construction of a schoolhouse, without a previous appropriation for the purpose by the advisory board of the township, or the consent of such board to create an indebtedness therefor. §§9590-9602 Burns 1908; *State, ex rel.*, v. *John, supra.*

To state sufficient grounds for a mandate against a trustee, it should have been shown not only that he refused to

act, but also that the necessary funds had been appropriated therefor by the township advisory board, or that such board, upon finding that an indispensable necessity existed for such house, had granted him permission to create an indebtedness for its construction. *Dunten* v. *State, ex rel., supra; State, ex rel.,* v. *Anderson, supra; Board, etc.,* v. *State, ex rel.* (1901), 156 Ind. 550. There is not only an absence in the petition and writ of these necessary averments, but an express negation of each of them.

The advisory board set up in its return that Francis M. John, the immediate predecessor of trustee Howard, in August and at the annual meeting in September, 1907, presented to said board that there existed an indispensable necessity for the construction of a graded school building upon the real estate described in the petition and writ, in conformity to plans and specifications set forth, and requested such board to declare the existence of such necessity; that the members of the board at the time duly considered the matter of the indispensable necessity for the construction of such building, and fully heard and weighed all the evidence presented to establish the existence of such necessity, and after duly, fairly and impartially weighing and considering such evidence, said advisory board, by a majority vote of its members, in good faith and in accordance with its best judgment, found and adjudged that such indispensable necessity did not exist, and refused to authorize said trustee to issue bonds or warrants of said township for $20,000, as aforesaid, for the construction of such building. The board further averred that it never had been and was not when the action was filed necessary to construct the schoolhouse described in the writ, as would more fully appear from the facts thereafter alleged.

It is then shown that the respondent's predecessor, John, in 1907, abandoned school districts eleven and twelve in

said township, by consolidating them with school district number thirteen, with the object in view of building a graded schoolhouse at the village of Terhune in said district thirteen for the use of all the school children residing in said former districts eleven, twelve and thirteen; that said consolidation had been accomplished when said John, as trustee, requested said advisory board to permit him to borrow money on the credit of the township for the construction of said new graded school building; that at the time of said request there were not to exceed ninety children residing in the combined territory of said three districts, and the number was, and had been for ten years, growing less each year; that the sum demanded by trustee John for the aforesaid purpose was $20,000, which sum was exorbitant and unreasonable; that a building consisting of three rooms, and costing, including all useful school equipment, not to exceed $10,000, would be fully adequate to meet all the requirements in providing a neat, safe and sanitary school building, and necessary and useful equipments for the accommodation of all the school children residing in the territory comprising said districts eleven, twelve and thirteen if they had remained consolidated.

Under the law as it now stands there is no doubt of its being the right and duty of the township trustee to take charge of the educational affairs of his township, 4. establish and locate conveniently a sufficient number of schools to educate the children therein, build suitable schoolhouses, and provide furniture, apparatus and other articles and educational appliances necessary for the thorough organization and efficient management of the schools. §6410 Burns 1908, Acts 1901 p. 514.

The manifest policy of the General Assembly is to commit to the school patrons, the township trustee and the county superintendent the settlement of all questions 5. pertaining to the changing of school districts, and the location and construction of schoolhouses,

and thus to remove such questions from the mischiefs of judicial trials. *Braden* v. *McNutt* (1888), 114 Ind. 214.

The legislative design is made further apparent by the provisions of the act creating and defining the powers and duties of advisory boards. It is enacted in section 6. nine of the act of 1899 (Acts 1899 p. 150, §9598 Burns 1908) that "if a trustee finds it necessary to erect a new schoolhouse, he shall procure suitable specifications therefor, to be used by the bidders in bidding and in the construction of such house. * * * The advisory board shall attend the letting. * * * All bids shall be in writing and be opened and read publicly at the time and place fixed in the notice. The trustee may take time to examine and satisfy himself as to which is the lowest and best bid, and shall advise with the advisory board thereon; and said board is hereby empowered to reject any and all bids. The trustee shall endorse on the bids whether rejected or accepted and preserve the same. When the bid is accepted, a proper contract shall then be reduced to writing for such building * * * and be signed by the successful bidder and the trustee, who shall require the bidder to give bond with security, to be approved by him, for the faithful execution of the contract."

While it is clear that the management of the schools, their abandonment and consolidation, the location, removal and construction of schoolhouses, and kindred subjects, are under the general supervision of the township trustee, his power in relation thereto is by no means exclusive. In removing a schoolhouse and relocating it at a new site he must have the concurrence of a majority of the patrons of the school affected, and of the county superintendent. §6417 Burns 1908, Acts 1893 p. 17, §1; *Carnahan* v. *State, ex rel.* (1900), 155 Ind. 156. He can, only upon the petition of a majority of the legal voters of the district, abandon a district school, and consolidate one school with another in the same township.

State, ex rel., *v.* Howard—174 Ind. 358.

§6421 Burns 1908, Acts 1901 p. 437. And this right is also subject to the judgment of the county superintendent on appeal. §6667 Burns 1908, §4537 R. S. 1881.

8. He can reëstablish any district school that has been abandoned, upon receiving a petition therefor signed by two-thirds of the legal voters of the district affected. See §6420 Burns 1908, Acts 1901 p. 159, §1.

In providing schoolhouses, and in determining when a necessity arises for the construction of new ones, the statutes clearly impose upon the township trustee, not

9. only the duty of taking the first step, but, subject to review by the county superintendent on appeal, the duty and power of selecting the site and settling the size and character of the building. As we have seen from the advisory board act, before letting the contract said trustee must procure plans and specifications of the building he has decided upon, for use in the bidding and in the construction of the house.

Furthermore, at the time of the letting, the trustee may take time to examine and satisfy himself as to which is the lowest and best bid, and shall consult with the advisory board therein, and when a bid has been accepted a contract shall be drawn and signed by the trustee and successful bidder, the latter to give bond to the approval of the former. It is here seen that the duties of the advisory board with respect to the building of schoolhouses relate wholly to the letting of the building contract and to the authorization of the trustee to use the money and credit of the township in the construction. The advisory board must attend the letting and advise with the trustee about the bids submitted, and it may reject a bid altogether, but there is no express authority anywhere in the act for the board to interfere with the site or plans adopted by the trustee for the building. Neither has it any expressed right to hold up the bids for its further and more deliberate consideration, nor share in the preparation and execution of

the contract, nor in the approval of the contractor's bond. But all the statutes relating to the management and administration of the schools must be construed together.

10. When so construed it is obvious that a controlling purpose in the passage of the advisory board act was to promote honesty and economy in the transaction of county business. It is, in effect, more a system of checks than of regulation. As applied to schoolhouse construction, while it preserves the right and duty of the township trustee to determine when it is necessary to build and also his right to determine the place, character and capacity of the structure, yet his conclusions must be fairly and honestly drawn, and reasonable from the viewpoint of economy and necessity. The law does not clothe the trustee with authority to construct a schoolhouse that is far beyond the reasonable needs of the district and which is more monumental to the building officer than is demanded by the welfare of the community. It is to restrain these excesses, too frequently indulged at public expense, that the advisory board is brought into the business of schoolhouse building. In such matters the board may be more than an advisory body. In extreme cases it has the power of veto; for it may refuse to declare the existence of an indispensable necessity; it may withhold from the trustee his authority to borrow money; it may even reject any and all bids made at the letting of a building contract. But it may do none of these things arbitrarily and without foundation in reason.

Like the trustee, in his decisions relating to the same matters, the board must also be able to point to a reasonable justification for its act, when it assumes to obstruct the proceedings of the school officers in their management of the schools. *Advisory Board, etc.,* v. *State, ex rel.* (1905), 164 Ind. 295. To hold that such boards may capriciously, or for some parsimonious, selfish or improper reason, refuse to make an appropriation, or to authorize a loan, or

that it may reject all bids, would be to give the law a construction that might seriously impair the efficiency of the school laws, which could not have been intended by the legislature.

Recurring now to the return of the advisory board to the alternative writ of mandate, we are of the opinion that it embodies the true spirit and intent of the statutes.

3. The return not only sets up that the board, in considering the question of indispensable necessity for the proposed building, and of the granting to the trustee authority to borrow money for its construction, acted in good faith, advisedly, fairly, impartially and in the exercise of its best judgment, and it affirms that the fact existed and still remains that the house proposed by the trustee was not then, is not now, and will not be in the near future necessary to any proper use of the schools, and that to make an appropriation, or authorize the creation of a township debt for the sum demanded, would be a wanton waste of the public money. Said board further avers in justification of its denial, that there are but ninety children of school age residing within the territory of consolidated district thirteen, and that the number has been constantly decreasing for ten years last past, and that a building of three rooms, and costing, including sanitary improvements and complete school equipment, not to exceed $10,000, would abundantly supply all the present and prospective needs of the district. Appellant's demurrer to the return admits these facts to be true, and, being true, they present a case of the class aimed at by the statute in conferring the power of prevention upon advisory boards. The sum of $20,000 was demanded by the trustee, and if that was twice the sum necessary for the construction and equipment of an up-to-date, adequate building, then the larger sum was wasteful and unreasonable, and properly prevented by the advisory board.

Another fact is pleaded by the board in defense of the

refusal complained of, that is equally sufficient. It is averred that since January, 1909, and prior to the filing and issuing of the amended alternative writ of mandate herein, more than two-thirds of the legal voters of each of said school districts eleven and twelve, who are entitled to vote for township trustee therein, petitioned the present trustee, Howard, the respondent hereto, to reëstablish the school in each of said districts eleven and twelve, which petition said trustee then and there complied with, and made an order of record to that effect, and a school is now being conducted in a regular and suitable school building situate in each of said districts, which school buildings, and also the school building in school district number thirteen, since the reëstablishment of said school districts eleven and twelve, have been repaired by the authority of said advisory board, made safe and sanitary, and each now affords ample school facilities for all the children within the respective districts.

As governing the state of facts here set up, the statute provides that "it shall be the duty of every township trustee to reëstablish any district school so abandoned upon the written petition of two-thirds of the legal voters who are entitled to vote for township trustee in such district." §6420 Burns 1908, Acts 1901 p. 159.

It is thus seen that it was the plain duty of respondent to grant the petition of the patrons and reëstablish the schools in districts eleven and twelve that had been previously abandoned and consolidated with district thirteen, thus completely nullifying the facts upon which the former trustee counted as a basis for an indispensable necessity for a large schoolhouse. And this reëstablishment of the school in the several districts had been fully accomplished before the filing and issuing of the amended petition and alternative writ of mandate herein.

The return was sufficient. A contrary conclusion would be equivalent to holding that advisory boards have no power

to restrain the extravagant and unreasonable expenditure of public moneys in the construction of school buildings, and we are not prepared to do this.

Judgment affirmed.