STEIGER ET AL. *v.* STATE OF INDIANA, EX REL. FIELDS, TRUSTEE.

[No. 23,178.  Filed July 13, 1917.]

1.   TRIAL.—*General and Special Verdict.—Statute.*—Section 572 Burns 1914, Acts 1897 p. 128, providing that in all actions tried by a jury, except cases in equity, a general verdict shall be rendered, but when requested by either party the jury shall find specially on particular questions of fact stated in writing in the form of interrogatories, is mandatory in its requirement that a general verdict be returned.  p. 512.

2.   TRIAL.—*Verdict.—Answers to Interrogatories.—Judgment.*— Where a general verdict proves to be a nullity, or is in irreconcilable conflict with answers to interrogatories which are returned by the jury therewith, and if, in either case, such answers affirmatively show the existence of every fact necessary to entitle plaintiff to a recovery and the nonexistence of every defense presented under the issues, or show as a matter of law that a valid defense has been established by the evidence, such answers may constitute a special verdict which will support a judgment in accordance therewith, but a special verdict is available only when a general verdict has been returned.  p. 512.

3.   MANDAMUS. — *General Verdict. — Instruction. — Statute.* — Where, in an action in mandamus, a jury was called to try the issues of fact presented by the pleadings, it was reversible error for the trial court to refuse an instruction requiring the return of a general verdict, since mandamus is not an equitable proceeding, but a common-law remedy to compel the performance of a legal duty, and when the pleadings present issues of fact, either party is entitled to a trial of such issues before a jury as in other civil proceedings.  p. 512.

4.   SCHOOLS AND SCHOOL DISTRICTS.—*Appropriation for School Buildings.—Township Trustee.—Advisory Board.—Authority.*

—*Mandamus.*—A writ of mandamus will not issue to compel a township advisory board on the demand of the trustee to authorize a bond issue for the building of a schoolhouse greater than is needed and not within the township's financial ability to construct. (*Advisory Board* v. *State, ex rel.* [1904], 164 Ind. 295, distinguished.)   p. 513.

5.  SCHOOLS AND SCHOOL DISTRICTS.—*Schoolhouse.—Location.— Authority to Determine.*—The matter of a school site rests exclusively with the trustee and the school authorities, subject to its establishment on township property.  p. 516.

6.  SCHOOLS AND SCHOOL DISTRICTS.—*School Site.—Action of Board of County Commissioners.—Collateral Attack.*—Where a school site, although within the corporate limits of a town, was exempted from the territory of the corporation by the board of commissioners, and remained thereafter the property of the township, the legality of the board's action cannot be determined on collateral attack in an action to mandate the township advisory board to appropriate funds for the construction of a school building.  p. 516.

From Morgan Circuit Court; *John H. James*, Special Judge.

Action by the State of Indiana, on the relation of Fred W. Fields, trustee, against George Steiger and others.   From a judgment for relator, the defendants appeal.  *Reversed.*

*Don McKahan, A. M. Bain* and *R. L. Royse,* for appellants.

*Will H. Pigg,* for appellee.

SPENCER, J.—Action in mandamus to require appellants, as members of the advisory board of Clay township, in Morgan county, to make an appropriation in the sum of $18,750 for the use of the relator, as township trustee, in the construction of a school building in that township.   In answer to the complaint appellants averred that prior to the commencement of this proceeding the members of the advisory board had met when requested so to do by the relator to consider the matter of authorizing the issuance of bonds and the making of an appropriation for the purpose sought by

this action, and had fully considered all matters pertaining to the character of the proposed building, the needs therefor, and the ability of the township to provide funds for the erection thereof as demanded by the relator; that, after fairly and impartially weighing and considering all facts pertaining thereto, as hereinafter set out, a majority of said board, in good faith and in accordance with its best judgment, were not of the opinion that a necessity existed for the construction of such a building as was proposed by the relator, or for the expenditure of funds for that purpose to the extent contemplated by said relator, or that the taxing and borrowing power of the township justified or warranted the expenditure for such purpose of the large sum of money demanded by the relator, especially after taking into consideration other needs and requirements of said school township; that for the reasons just stated the board did not authorize the issuance of bonds and make the appropriation as demanded by the relator, but was ready and willing to appropriate for the building of a schoolhouse the sum of $12,000 and to authorize the issuance of bonds sufficient to provide that amount; that said sum was the total amount which the board, in view of the financial condition of the township and its other needs, could reasonably and safely appropriate for the purpose indicated and that such a building would be entirely ample and suitable for the needs at the proposed location; that the board did not make the appropriation for the smaller amount, however, for the sole reason that when they offered so to do the relator announced to them that he would not accept such action on their part and would not utilize such funds or undertake the construction of such a building as said funds would provide for; that the facts considered by the board in forming its judgment that a necessity did not exist for an expenditure of $18,750 for a new school

building as proposed by the relator were, in substance, as follows: That the site for the proposed building is located entirely within the corporate limits of the town of Brooklyn, but that in the incorporation of said town the board of commissioners of Morgan county attempted to exempt the school site in question from the Brooklyn corporation; that said town has no school buildings or school facilities of any kind other than such as have heretofore been maintained on said site by Clay township; that the relator proposes to build a schoolhouse primarily for the use of the town of Brooklyn and of townships adjoining Clay township, and only incidentally for the benefit of that township; that on consideration of the value of the taxable property within the township, after deducting the amount of mortgage exemptions allowed by law, and the present indebtedness of the school township, the proposed expenditure will be found to exceed the bonding power of the township; that said township has divers other schoolhouses which, during the time of this controversy, have been, and now are badly in need of permanent repairs to such extent as will require the expenditure of at least $2,000, and that at any time in the future emergencies are liable to arise which will require the expenditure of considerable sums of money in the maintenance of the school property of said township, other than the proposed new building, and which needs cannot be provided against by said township except through the maintenance of a reasonable reserve of its bonding power; that the appropriation demanded by the relator is not sufficient properly to complete and equip such a building as he proposes to erect and furnish an adequate water supply for the same, but that the relator proposes to erect at this time a mere shell of a building which must later be completed and suitably equipped through the expenditure of future revenues and through an exercise

of future bonding power of the township, all to the neglect and disregard of future needs and requirements of other school property of said township. Other averments of the answer tend to show that a building smaller than that proposed by the relator would be amply sufficient to provide for the school requirements of the township at the site in question and could be built and equipped for the sum of $12,000; that the building planned by the relator is not now and will not in the near future be necessary to the proper use of said school but that an appropriation therefor would be a waste of public funds and would tend to cripple the finances of the township for years to come; that by reason of the facts above set out and solely through a desire to serve the best interests of the township the advisory board declined to make the appropriation as demanded and believes now that the same ought not to be made.

A jury was called to try the issues of fact presented by the complaint and appellants' affirmative answer thereto, but was instructed only to answer and return certain interrogatories propounded to it, without a general verdict. Appellants' requested instruction No. 11, which sought to require the return of a general verdict, was refused, and the objections urged against this action on the part of the trial court present our initial inquiry.

Section 572 Burns 1914, Acts 1897 p. 128, expressly provides "that in all actions hereafter tried by a jury, the jury shall render a general verdict, but in all cases when requested by either party, the court shall instruct them when they render a general verdict to find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories on any or all the issues in the cause, and this shall be the only form of verdict submitted to or rendered by the

jury in the cause: *Provided,* The provisions in this section shall not apply to cases in equity." This statute is mandatory in its requirement that a general verdict be returned in all cases which shall be tried by a jury, other than cases in equity, and its provisions must be observed. Occasions may arise in which the general verdict proves to be a nullity, or is in irreconcilable conflict with answers to interrogatories which are returned by the jury therewith, and if, on either occasion, such answers affirmatively show the existence of every fact necessary to entitle the plaintiff to a recovery and the nonexistence of every defense presented under the issues, or show as a matter of law that a valid defense has been established by the evidence, such answers may constitute a special verdict which will support a judgment in accordance therewith. *Childress* v. *Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 259, 105 N. E. 467; *Lake Erie, etc., R. Co.* v. *Reed* (1914), 57 Ind. App. 65, 68, 103 N. E. 127.

It is in this sense alone that a special verdict is proper under our practice and it is available only when a general verdict has accompanied its return. It is apparent, therefore, that the trial court erred in refusing to give appellants' instruction No. 11 unless this action was not properly triable by a jury. On that issue the law is clear. The case of *State, ex rel.* v. *Jackson* (1906); 168 Ind. 384, 387, 81 N. E. 62, 63, expressly determines that "mandamus is in no sense an equitable proceeding, but is a common-law remedy to compel the performance of a legal duty," and the statute, as well as the authorities, supports the rule that when, in such an action, the pleadings present issues of fact, either party is entitled to a trial of such issues before a jury *as in other civil proceedings.* §1228 Burns 1914; *Mott* v. *State, ex rel.* (1896), 145 Ind. 353, 355, 44 N. E. 548; *State, ex rel.* v. *Burnsville*

*Turnpike Co.* (1884), 97 Ind. 416, 421. The trial court erred in refusing to direct the jury to return a general verdict in this cause, under proper instructions as to the law applicable to the issues.

This conclusion renders necessary a reversal of the judgment below, but as other questions presented are certain to arise on a retrial of the issues, we pro-ceed to their consideration. The principal contention made by appellants as touching the merits of the controversy, is that a township advisory board has some discretion in the making of appropriations and that it cannot be compelled, arbitrarily and without regard to circumstances, to appropriate for the building of a schoolhouse such amount as the township trustee may demand for that purpose. In opposition to this contention, appellee relies on the case of *Advisory Board, etc.*, v. *State, ex rel.* (1904), 164 Ind. 295, 73 N. E. 700, in which it is held that a township advisory board may be compelled by mandate to appropriate money for the erection of a schoolhouse and may not successfully rest its refusal so to act on the alleged good faith of its position and on its belief that the building of a schoolhouse would be a waste of public funds; that the remedy in such cases is by appeal to the county superintendent from the decision of the township trustee. In that case, however, the advisory board refused to make *any* appropriation for the purpose indicated and took a position which seriously interfered with the efforts of the trustee to maintain proper school facilities in his jurisdiction. This court held, in effect, that, under the facts as presented, the position of the advisory board was arbitrary and without substantial basis but expressly stated, at page 302 of the opinion, that "no question of economy or extravagance in the erection of the proposed building is involved in this ap-

peal." Such questions are involved in the present case, however, and were involved in the case of *State, ex rel.* v. *Howard* (1910), 174 Ind. 358, 92 N. E. 115, in which, after discussing the respective powers and duties of the trustee and the advisory board with regard to school matters, this court said, beginning at page 365 of the opinion: "It is here seen that the duties of the advisory board with respect to the building of schoolhouses relate wholly to the letting of the building contract and to the authorization of the trustee to use the money and credit of the township in the construction. The advisory board must attend the letting and advise with the trustee about the bids submitted, and it may reject a bid altogether, but there is no express authority anywhere in the act for the board to interfere with the site or plans adopted by the trustee for the building. Neither has it any expressed right to hold up the bids for its further and more deliberate consideration, nor share in the preparation and execution of the contract, nor in the approval of the contractor's bond. But all the statutes relating to the management and administration of the schools must be construed together. When so construed it is obvious that a controlling purpose in the passage of the advisory board act was to promote honesty and economy in the transaction of county business. It is, in effect, more a system of checks than of regulation. As applied to schoolhouse construction, while it preserves the right and duty of the township trustee to determine when it is necessary to build and also his right to determine the place, character and capacity of the structure, yet his conclusions must be fairly and honestly drawn, and reasonable from the viewpoint of economy and necessity. The law does not clothe the trustee with authority to construct a schoolhouse that is far beyond the reasonable needs of the district and which is more monumental to the build-

ing officer than is demanded by the welfare of the community. It is to restrain these excesses, too frequently indulged at public expense, that the advisory board is brought into the business of schoolhouse building. In such matters the board may be more than an advisory body. In extreme cases it has the power of veto; for it may refuse to declare the existence of an indispensible necessity; it may withhold from the trustee his authority to borrow money; it may even reject any and all bids made at the letting of the building contract. But it may do none of these things arbitrarily and without foundation in reason. Like the trustee, in his decisions relating to the same matters, the board must also be able to point to a reasonable justification for its act, when it assumes to obstruct the proceedings of the school officers in their management of the schools. *Advisory Board, etc.*, v. *State, ex rel.* (1905), 164 Ind. 295. To hold that such boards may capriciously, or for some parsimonious, selfish or improper reason, refuse to make an appropriation, or to authorize a loan, or that it may reject all bids, would be to give the law a construction that might seriously impair the efficiency of the school laws, which could not have been intended by the legislature."

In the present case, appellants have indicated their willingness to make an appropriation and to authorize a bond issue for the construction of a schoolhouse sufficient to meet the needs of the school district in question, but assert that the building contemplated by the relator is greater than is needed and is not within the financial ability of the township to construct. Such allegations, if sustained by proof, are sufficient to establish appellants' defense as against a demand for an expenditure greater than is necessary or prudent.

Appellants' further contention that the relator has no power to establish a school at the site in question cannot

be sustained. The matter of school site rests exclusively with the trustee and the school authorities, subject, of course, to its establishment on township property. Appellants' answer admits that the site in question, although within the corporate limits of the town of Brooklyn, was, nevertheless, exempted from the territory of the corporation by the board of commissioners, and remained thereafter the property of the township. Whether this action on the part of the board was legal or illegal is a matter not to be determined on collateral attack. *Galvin* v. *Taylor* (1915), 184 Ind. 736, 740, 112 N. E. 513.

Other questions presented may not arise again and are not considered.

Judgment reversed, with instructions to sustain appellants' motion for a new trial and for further proceedings not inconsistent herewith.

NOTE.—Reported in 116 N. E. 913. See under (4) 35 Cyc 931; (6) 35 Cyc 846. Mandamus against ministerial officers and boards with respect to the management of schools, 98 Am. St. 878.