# The Attorney General on the relation of James M. Foster v. The Board of Supervisors of Lake County.

*Equity practice: Motion to dismiss: Proofs: Final hearing: Decree.* It is irregular to dismiss a bill in equity, on motion, for want of jurisdiction, upon grounds required to be supported by proofs, except it be accomplished by way of what may be treated as a final hearing upon pleadings and the facts brought in by stipulation.

*Chancery appeals: Jurisdiction; Questions of regularity.* On appeal from a decree dismissing a bill for want of jurisdiction, questions of regularity of practice will not avail where the appellate court agrees with the court below on the main question of lack of jurisdiction.

ATTORNEY GENERAL *v.* SUPERVISORS OF LAKE COUNTY.

*County seat: Removal: Notice: Clerk: Supervisors: Ratification.* Proceedings for the removal of a county seat are not rendered invalid by reason of the board of supervisors leaving the giving of the requisite notice to the clerk, without prescribing its form or contents, where no mischief is shown to have resulted, and the notice given was in due form, and the supervisors have sanctioned and ratified what was done by canvassing the votes and declaring the result.

*Removal of county seat: Supervisors: Motives: Local contributions.* It is not improper for the supervisors, while considering the question of removing the county seat, to take into the account any local provisions that may be made to relieve the county from the expenses incident to the removal; and where they have passed an unconditional resolution for removal, and the people have voted upon and approved it, no inquiry into motives, either of the supervisors or the people, can be gone into to invalidate the proceedings.

*Removal of county seat: Political question: Private parties.* The question of the removal of a county seat is purely a political question, and does not in any way legally involve the rights of private parties; and if the removal is effected in the manner provided by law, that is conclusive.

*County seat: Removal: Decision of supervisors conclusive: Illegal votes.* Under our statute (*Comp. L. 1871*, § 485) the decision of the supervisors, in declaring and entering upon their records the result of their canvass of the votes upon a proposition for the removal of the county seat, is conclusive for all purposes whatever, and leaves no question open to contest afterwards; and the removal cannot thereafter be defeated in the courts by a showing that it was carried by illegal votes.

*Heard January 14. Decided January 18.*

Appeal in Chancery from Lake Circuit.

*Andrew J. Smith, Attorney General, S. F. Dwight,* and *Hughes, O'Brien & Smiley,* for informant.

*White & Haight,* for defendants.

COOLEY, CH. J:

The purpose of the information in this case was to obtain an injunction to restrain the removal of the county seat of Lake county from Chase to Baldwin. The information shows a resolution of the board of supervisors for fixing the county seat at Baldwin, and a submission of the question of the removal to the voters of the county. It also shows a vote taken in favor of the removal, but alleges that the majority was secured by illegal votes. It denies that since the election the board of supervisors have taken any further action to complete the removal, but avers that certain par-

ties have taken the records and office furniture of the county treasurer's and sheriff's offices and removed them to Baldwin without any legal authority.

The defendants filed their answer, but subsequently moved to dismiss the case for want of jurisdiction. For the purposes of that motion the proceedings of the board of supervisors were put in evidence by stipulation, and they showed a proper resolution for the removal of the county seat, adopted after negotiations with the townships particularly interested in the removal, and with certain persons named, designed to secure donations to the county of lands on which to erect county buildings, and of funds for their erection. They also showed a resolution by the board that the county clerk make the necessary arrangements for submitting to the electors of the county the proposition for the removal of the county seat, the publication of notice by him for the purpose, and the canvass of votes cast at the township elections in April, 1875, with a favorable result.

Upon this motion, and with the proceedings of the supervisors thus brought before the court by stipulation, the bill was dismissed, and the relator appealed. One of the objections made to the decree of dismissal is, that the proceeding was in violation of established practice, which would preclude the questions which must have been considered on the motion from being brought to the attention of the court otherwise than by demurrer, or on final hearing on pleadings or pleadings and proofs.

If this was not a hearing by consent on pleadings and on facts brought in by stipulation, it was certainly irregular. But the question of regularity cannot now be very important if the court below was correct in holding that the information made out no case for relief. We could not reasonably be expected to do so futile a thing as to send back a case for rehearing if the only complaint was that the court had prematurely discovered its want of jurisdiction. We shall therefore proceed to an examination of the case with a view to a determination of the jurisdictional questions.

The information appears to rely upon three grounds: *first*, that the board of supervisors left the giving of notice to the clerk, instead of prescribing the form and contents of the notice for him; *second*, that the board took their action on considerations which were not submitted to the people, that is to say, on the negotiations with towns and people interested; and, *third*, that by reason of illegal votes the canvass did not show a true expression of the will of the electors. The first two objections, it is claimed, are made good by the records; the third the relator demands a right to establish by evidence.

We are not prepared to say that there is any force in the first objection. It must certainly be a very idle ceremony for the board of supervisors to prescribe for its clerk the form and contents of a notice in a case so simple as this. And even if this were in strictness requisite, the objection is so technical and insubstantial that it ought not to prevail unless it appears that mischief has resulted from the neglect to give the proper direction, or that the board, with whom the discretionary authority in the premises rested, has failed to recognize and ratify what was done. Nothing of the kind appears here. Notice in due form was given, the election was held, and the supervisors sanctioned what had been done by canvassing the votes and declaring the result. This we think was sufficient.

The second objection was not well taken. There is nothing improper in a board of supervisors, who are considering the question of removing a county seat, taking into the account any local provisions that may be made to relieve the county from the expenses incident to the removal. If they finally pass an unconditional resolution for the removal, and the people vote upon and approve a like unconditional proposition, that is sufficient. No inquiry can be gone into in order to determine what it was that influenced the minds, of either supervisors or people, in reaching the conclusion they have agreed upon.

The right of the relator to go into evidence to show that illegal votes were cast, must depend upon the statute. The

question of the removal of a county seat is purely a political question, and does not in any way legally involve the rights of private parties.    If the removal is effected in the manner provided by law, that is conclusive.    The question on this branch of the case is therefore a question of statutory construction, and perhaps- nothing more.

The constitution *(Art. X, § 8)*, provides that "no county seat once established shall be removed, until the place to which it is proposed to be removed shall be designated by two-thirds of the board of supervisors of the county, and a majority of the electors voting thereon shall have voted in favor of the proposed location, in such manner as shall be prescribed by law."    The statute, after providing for the proper submission of a proposition duly adopted by the supervisors, and for the voting thereon, and the canvass of the votes by the township canvassers, and the making out of proper statements and certificates of the result, proceeds to say:    "and the board of supervisors, for the purpose of ascertaining the result of such vote in such county, shall examine such statements and certificates, and canvass the votes therein certified, and shall determine and declare the result of the vote in the county, and such result shall be entered upon their records; and in case the result shall be in favor of the proposed removal, they shall provide for such removal, together with all the records and papers of such county, within one year after such result shall be ascertained and determined as aforesaid by them, and shall remove the same as soon as suitable buildings shall have been provided for the reception thereof, and they shall enter upon their records the time when such removal shall be deemed to have taken place, and from and after that time the place so designated shall be and continue the county seat of said county for all purposes whatsoever."—*Comp. L., 485.*

It is impossible, as it seems to us, to give due force to this language, without holding that the decision of the supervisors was meant to be, and must be, conclusive.    There

is no intimation that any right to contest it was to be left open afterwards; but their action is to settle the question of the removal "for all purposes whatsoever." It could not settle that question if a judicial review were still the right of dissatisfied parties. The question was one of a nature peculiarly proper to be submitted finally to their determination, and this consideration is not without its force when the question is one of construction.

But there are other considerations bearing in the same direction which may be well illustrated by the present case. The diligence of the relator enabled him to present his complaint before the removal to Baldwin had been perfected, but that is a circumstance that may not exist in the next case that arises. The circuit judge is required to hold his courts in the court house provided for him *(Comp. L.,* § *4942),* and he cannot lawfully hold them elsewhere, except when the county has no court house at all. The officers of the court, the sheriff and clerk, are required to keep their offices and records at the county seat. If the circuit court in chancery could take cognizance of this case, it can of any similar case, and perhaps in the next case, sitting at the new county seat, it will be called upon by *informa-tion* to make solemn decision that it has no authority to decide, and to take jurisdiction for the purpose of holding that sitting where it does it has no jurisdiction at all. This would be the anomalous and absurd position in which a judge might be placed if he should assume to take cognizance of such a question.

We are of opinion that the question whether a majority of votes was cast for the removal of the county seat is concluded by the canvass and declaration of the supervisors, and that the relator has no just ground of complaint in the dismissal of his information.

The decree of dismissal will be affirmed, with costs against the relator.

The other Justices concurred.