# JUNE TERM, 1893.

THOMAS DOUBLE v. JAMES H. McQUEEN, ANDREW DICKIE, AND WILLIAM W. MURPHY.

*Removal of county-seat — Determination of result of election— Mandamus.*

1. The action of the board of supervisors under How. Stat. § 491, in determining and entering upon their records the result of their canvass of the votes cast at an election regularly held upon the question of the removal of the county-seat of the county, is conclusive, and the removal cannot be defeated in the courts by a showing that the question was carried by an omission to return all of the votes cast against it.

2. Where, in answer to an order to show cause why a *mandamus* should not issue to compel the board of supervisors of a county to reconvene and canvass the votes cast upon the question of the removal of the county-seat, the respondents state that they have not refused to make such canvass, but propose to make it on the day to which the board has adjourned, there is no necessity for issuing the writ.

3. Where, in such a case, the answer shows that the majority of the votes actually cast was against the removal, and that the inspectors of election in certain townships fraudulently omitted to make true and correct returns of the votes cast, and the respondents ask that said inspectors be compelled to make a return to the facts thus set up, the answer will be treated as a petition, and an order to show cause why they have not made such true and correct returns will issue against said inspectors.

*Mandamus.* Argued May 31, 1893. Decided June 7, 1893.

Relator applied for *mandamus* to compel the board of supervisors of Montmorency county to reconvene, and canvass the votes cast upon the question of the removal of the county-seat, and determine the result; and an order was granted on the prayer of the respondents, requiring the inspectors of election of certain townships, who are charged in the answer with fraudulently omitting to make true and correct returns, to show cause why they should not be compelled to make such returns.     The facts are stated in the opinion.

*T. S. Joslin* and *J. E. Kinnane,* for relator.

*Joseph H. Cobb* and *Frank Emerick,* for respondents.

LONG, J.   The county of Montmorency is composed of the six townships of Albert, Briley, Hillman, Montmorency, Rust, and Wheatfield.   James H. McQueen is the supervisor of the township of Rust, Andrew Dickie of the township of Montmorency, and William Murphy of the township of Hillman.     February 24, 1893, a special meeting of the board of supervisors of the county was called for the purpose of considering the question of the removal of the county-seat from Hillman to another place nearer the center of the county.     A resolution was passed by the board, directing that the question be submitted to the electors of the several townships at the annual election to be held on April 3 following.     This notice was published, and it is alleged by the petition here that all the proceedings relative to submitting the question to the electors were regular and in compliance with the statute.     The electors of the different townships voted by ballot upon the question, and the votes were certified by the inspectors of election to the county clerk within 10 days.     On April 21 a meeting of the board of supervisors was called for the purpose of canvassing these votes.     The clerk laid before the board the

·statements of votes as returned by the inspectors. It is claimed by the petition that after the votes in the township of Hillman had been canvassed the respondents refused to proceed further with the canvass. The other three supervisors attempted to proceed with the canvass, and offered motions and resolutions for that purpose, but were unable to do so, and thereupon the board adjourned until July 5, 1893. A *mandamus* is asked to compel the board to reconvene, and canvass the votes as certified by the inspectors of election from the different townships, and determine and declare the result of the vote, and enter the result upon its records, and perform all things relative to the removal of the county-seat, as is required by section 491, How. Stat.

An order to show cause was issued, and the three respondents answer, admitting the calling of the board of supervisors upon the question of the removal of the county-seat, and the submitting of that question to the electors, but setting up some irregularities in the publication of the notice of election and proofs of publication, claiming that such proofs were never properly brought before the board as required by law. They admit that the board adjourned until July 5, but insist that such adjournment was for the purpose of canvassing the votes cast upon the question, and determining the result. The reason of the adjournment of the board is stated in the answer, substantially, that prior to the election the board of election commissioners caused to be prepared and printed official ballots to be used by the electors of the county in voting at such election for candidates for the offices of Justice of the Supreme Court, Regents of the University, circuit judge, and county school commissioner, and upon four proposed amendments to the Constitution, as also upon the question of raising by bond the sum of $5,000 for building purposes, and of the removal of the county-

seat in accordance with the terms of the resolution adopted by the board of supervisors; that such official ballots were properly distributed by the board of election commissioners, and placed in the hands of the inspectors of election of the different townships before the election, and were used and voted by the electors of each of said townships at such election; that in the township of Albert there were cast for such candidates 110 votes for Justice of the Supreme Court, 105 votes for Regents of the University, 110 votes for circuit judge, 117 votes for supervisors, and for the various other township officers from 103 to 110 votes. The respondents state upon information and belief that in the township of Albert there were cast at such election at least 80 votes against the removal of the county-seat; that such votes were cast by the electors properly marking such official ballots in the square opposite the words, "A proposition to remove the county-seat to the north-west quarter of the south-west quarter of section 12, township 30 north, of range 2 east,—No;" that most of such votes so cast against the removal of the county-seat were voted by residents of the village of Lewiston, in such township, and situate about nine miles from the polling place in such township; that the electors residing in said village came early to said polling place, substantially together, and voted almost to a man before noon of that day; that such electors were informed by the inspectors of election that they were to vote upon the question of the removal of the county-seat upon the official ballot provided and furnished them by the election inspectors, but were not informed that it was intended that they should vote upon such proposition in a separate ballot-box, or in any other way than upon such official ballots; that after the electors from the village of Lewiston had gone home, the election inspectors—of which the relator was one—produced a small ballot-box, and ballots which had printed thereon, "For the removal of the

county seat,—Yes;" that thereupon 23 electors residing in
the northerly part of the township, who had purposely
refrained from voting until that time, under an under-
standing with the election inspectors, came forward and
voted the tickets handed them by the election inspectors,
which were placed in the small box; that the election
inspectors thereupon assumed to decide that the 80 votes
and more cast against the removal of the county-seat upon
the official ballots were illegal, and canvassed and returned
to the board of supervisors only the 23 votes placed in the
small box, and all of which were in favor of such removal;
that these facts were made to appear to the board of
supervisors by protests supported by affidavits against the
canvassing of the votes returned by the inspectors of
election.

It further appears by the answer that in the township
of Briley, while many electors voted in a separate ballot-
box, those electors also had an opportunity to vote twice
upon the question; that is, once by the official ballot, and
again by a separate ballot printed by the election inspectors.
It is also claimed that the same state of facts existed in
the township of Wheatfield.

By the answer it further appears that upon the conven-
ing of the board of supervisors they canvassed the votes
from the township of Hillman, and found 6 votes cast for
the removal and 117 against it. The board thereupon
proceeded to canvass the votes of the township of Albert,
and, upon reading the protest and affidavits against the
canvass from that township as returned by the inspectors,
they suspended their canvass, and adjourned until the
following day, and thereafter adjourned until July 5. The
respondents contend that the board of supervisors, con-
vened for the purpose of canvassing votes upon the ques-
tion of the removal of the county-seat, are possessed of
greater powers than a board of canvassers to determine

the result of an election; that they have a right to deter-
mine the result of the ballots, and whether the question
of such removal is carried by the vote of a majority of
the electors; that such determination, when made by the
board of supervisors, is final, and cannot thereafter be
questioned in any court; that, being possessed of such
powers, the adjournment was had for the purpose of
ascertaining by a full investigation the manner of voting,
whether upon official ballots or otherwise, in these several
townships, and whether the official ballots in the town-
ship of Albert had been thrown out by the inspectors of
election; that they intend to meet and determine the
true result of all the votes cast; and to this end the
respondents petition in their answer that an order may
issue directed to the election inspectors of the township of
Albert, compelling them to reconvene and recanvass the
votes cast in that township upon that question, and make
a further return thereof.

Under the return made by the respondents—that they
had not refused to canvass the votes, but proposed to
make a canvass on July 5, the day to which they have
adjourned—there is no necessity for issuing the writ.
Under a somewhat similar return in *Belknap v. Board of
Canvassers*[1] the writ was denied. Counsel on the argu-
ment of the case in this Court, however, asked us to
determine some of the other questions involved, as they
are of great public importance, and their settlement now
would save the county and respondents considerable
expense.

The answer must be taken as true. It sets up facts
which, if true, would change the result of the election.
Upon the face of the returns made by the inspectors of
election the majority of the votes cast was in favor of the

---

[1] Decided December 3, 1892, but no opinion filed.

removal. By the return made by the respondents it
appears that the majority of the votes actually cast was
against the removal. The inspectors of election in these
several townships are charged with fraudulently omitting
to make true and correct returns. This charge is made
upon affidavits filed with the board of supervisors, who
now ask that the inspectors of election be compelled to
make a return to the facts set up in the answer. The
respondents desire that their answer be taken as a petition
for an order to show cause against the inspectors of elec-
tion of the township of Albert why they have not returned
a statement of the votes cast upon the " official ballot,"
so called. The true result of the ballots of those town-
ships should be ascertained before the board of supervisors
should be compelled to determine what the total vote of
the county on that question is.

The decision of the board of supervisors under the
statute (How. Stat. § 491) in determining and entering
upon their records the result of their canvass of the votes
cast at an election regularly held is conclusive for all
purposes, and leaves no question open to contest afterwards,
and the removal could not thereafter be defeated in the
courts by a showing that it was carried by an omission to
return all the votes cast against such removal. *Attorney
General v. Board of Supervisors*, 33 Mich. 289; *Attorney
General v. Board of Supervisors*, 34 Id. 211; *People v.
County Treasurer*, 41 Id. 6; *Hipp v. Board of Supervisors*,
62 Id. 456; *Attorney General v. Board of Canvassers*, 64
Id. 612. In *Hipp v. Board of Supervisors, supra*, it was
said by Chief Justice CAMPBELL:

" The Constitution has not empowered this Court to
settle controversies not judicial, which are very wisely left
to the proper local and representative agencies of the
people."

The statute authorizing the board of supervisors to can-

vass ι the votes and declare the result provides that when the result is ascertained by the board and entered upon their records, if it is in favor of the removal, they shall provide for such removal within one year, and the place so designated shall continue the county-seat of said county for all purposes whatsoever. It is evident from the language of this statute that the supervisors alone are to determine the final result of the vote. For the purpose of this determination they have the right to know what the will of the people is as expressed at the polls. The votes cast upon the official ballot in the form thereon printed should not be excluded by the inspectors of election. The voters of that township cannot be thus disfranchised.

The answer herein will be treated as a petition, and an order to show cause will issue, according to the prayer in the answer, against the inspectors of election of the township of Albert, and also against the inspectors of election of the townships of Briley and Wheatfield.

The other Justices concurred.