STATE EX REL. GEORGE L. GRENVILLE v. LOUIS NASH.[1]

July 14, 1916.

Nos. 19,842—(216).

**City of St. Paul — separate drainage system for rain water.**

  1. Under the building code of the city of St. Paul, the building inspector may permit the construction of a drainage system for roof water wholly separate from the sewerage system of the building.

**Mandamus — no writ when parties are ready to do required act.**

  2. *Mandamus* will not issue to compel the revocation of a building permit, for a defect which has been corrected or which the parties are ready and willing to correct.

**Revocation of building permit.**

  3. The court will not compel the building inspector to revoke a building permit, unless the construction authorized thereby clearly violates the building regulations in such substantial respects as to endanger the public health, safety or welfare. The trial court correctly *held* that the facts alleged would not justify the court in requiring the revocation of the permit in question.

Upon the relation of George L. Grenville, the district court for Ramsey county granted its alternative writ of *mandamus* directed to Louis Nash as commissioner of parks, playgrounds and public buildings of the city of St. Paul, requiring him to revoke the permit granted by him to the Overland Stores Company to construct a building on University avenue in that city in violation of the building code of the city or show cause why he had not done so. The Overland Stores Company filed its complaint in intervention. The motions of respondent and intervener for judgment on the pleadings were granted and the proceeding dismissed by Olin B. Lewis, J. The motion of the relator for a new trial was denied. From the judgment entered pursuant to the order for judgment, relator appealed. Affirmed.

[1] Reported in 158 N. W. 730.

*Lawler & Mulally,* for appellant.
*O. H. O'Neill* and *J. P. Kyle,* for respondent.
*Kenneth G. Brill,* for intervener.

TAYLOR, C.

Defendant as building inspector of the city of St. Paul issued a building permit to the intervener for the erection of a large building.in that city according to plans and specifications referred to therein, and the intervener began the construction of the building thereunder. Relator, alleging that the plumbing authorized by the permit differed in certain details from that prescribed by the "building code," procured the issuance of an alternative writ of *mandamus* commanding defendant to revoke the permit for the building or show cause why he should not do so. Defendant filed an answer; the intervener filed a complaint in intervention; and both asserted that the permit violated no provision of the building code and was regular and valid. All parties made motions for judgment on the pleadings and the court rendered judgment quashing the writ. Relator appealed.

A sewerage system with appropriate fixtures and plumbing is provided for carrying the sewage from the building and discharging it into the city sewer. That this sewerage system complies in all respects with the requirements of the building code is not questioned. A drainage system, entirely separate from the sewerage system, is provided for disposing of rain water from the roof. This system consists of a series of upright pipes inside the building leading from the roof to small cisterns or water receptacles 30 inches in diameter located below the surface of the ground, of horizontal drains constructed of sewer pipe leading from these small cisterns to a large cistern outside the building, and of a large drain also constructed of sewer pipe leading from this large cistern to the city sewer. Relator assigns as grounds for revoking the permit that the specifications for this drainage system fail to comply with the requirements of the building code in the following particulars: That the pipes leading from the roof to the small cisterns are to be made of galvanized iron; that the drains from the small cisterns to the large cistern are to be made of

sewer pipe; that the small cisterns are not properly trapped nor connected with the sewer system of the building, and that the outlet pipes of the cisterns are not provided with back pressure valves.

The ordinance requires "inside leaders" to be made of cast iron, wrought iron, or steel pipe. In answer to relator's claim that the specifications violated this provision by permitting the use of galvanized iron pipe, respondents assert that galvanized iron pipe is none the less iron pipe because it has a coating of zinc or tin. They also alleged that the specification of galvanized pipe was an error which had been corrected, and presented amendments which had been made to the specifications requiring these pipes to be made of wrought iron or steel. *"Mandamus* will not issue to compel the doing of an act which has already been done, or which the respondent is willing to do without coercion." 19 Am. & Eng. Enc. (2d ed.) 758. Neither will it issue to compel the revocation of a building permit for a defect which has been corrected, or which the parties concerned are ready and willing to correct.

Relator's contention that the use of sewer pipe for the horizontal drains extending from the small inside cisterns to the large outside cistern is prohibited by the ordinance rests upon the further contention that the "inside leaders" mentioned above, include these drains as well as the vertical pipes extending from the roof to the small cisterns. Respondents deny this, and assert that the provision as to inside leaders does not apply to such horizontal pipes. In providing how water from the roof shall be disposed of, the ordinance uses the terms, "leaders," "outside leaders," and "inside leaders," but makes no attempt to define what shall be included within those terms. Defendant, the building inspector, upon whom rested the duty of determining, in the first instance, whether the specifications complied with the ordinance, construed "inside leaders" as meaning only the pipes leading from the roof to the small cisterns, and we are unable to say that such construction was erroneous.

The ordinance provides: "All buildings shall be kept provided with proper metallic leaders for conducting water from the roofs in such manner as shall protect the walls and foundations of said buildings from injury, and shall be connected with street sewer if there is one on the street. The said leaders must be placed so that no water is allowed to flow upon the sidewalk. * * * The outlet pipes of all catch basins and

surface bell traps shall be not less than three inches, properly trapped and connected with the house drain. Said outlet pipes shall be provided with a back pressure valve, the size to be not less than three inches."

The "house drain" referred to is defined in the ordinance, and includes the main horizontal pipe, and its branches, of that part of the sewerage system which is within the building. The catch basins referred to may probably be taken as including the small cisterns. The ordinance apparently contemplates that roof water may be disposed of without discharging it into the "house drain;" but provides that the outlet pipes of catch basins shall be trapped, be connected with the "house drain," and be provided with back pressure valves.

The inlet and outlet pipes of the small cisterns are so arranged that these cisterns act as traps, but they are not connected with the sewerage system of the building, and are not provided with back pressure valves. If the provision that the outlet pipes be connected with the house drain and be provided with back pressure valves applies in the present case, the specifications do not conform to the ordinance in those particulars. The ordinance further provides that the building inspector "shall have power, and it shall be his duty to pass upon any question relative to the mode, manner of construction, or materials to be used in the erection or alteration of any building," and to require a compliance with the prescribed regulations; and further provides that whenever he shall refuse to approve the mode or manner of construction or materials to be used in the erection of any building, or when it is claimed that the regulations of the building code do not apply, "or that an equally good and more desirable form of construction can be employed in any specific case," and he has refused to issue a permit therefor, the owner may appeal from his decision to a board of appeals. We think this provision intends that the building inspector shall have power to approve and permit "an equally good and more desirable form of construction," although it may differ from that outlined in the ordinance. It is a matter of common knowledge that forms and modes of construction have changed greatly in recent years and are changing constantly. Unless the use which may be made of his property be limited by contractual obligations to others, the owner has the right to improve it in such manner as he sees fit, except as restricted by regulations which tend to promote the public health, safety

and welfare, and to secure to others a like enjoyment of their property. An ordinance requiring buildings to be constructed in a prescribed manner and of prescribed materials, and absolutely prohibiting the construction thereof in any other manner or with any other materials, although equally good or better, so far as the public interests are affected thereby, would be of doubtful validity. This is a large building having a roof surface of slightly more than two acres. Why a drainage system for disposing of the roof water will not conserve the public health, safety and welfare equally as well, if it be entirely separate from the sewerage system of the building, as it would if it connected with and discharged into such sewerage system, is difficult to see. The duty rested upon defendant to determine, in the first instance, whether the construction here proposed was equally as good as that outlined in the ordinance. He determined that it was and issued a permit for the erection of the building which provided for installing the two separate systems. The court will not compel him to revoke such permit, unless the construction authorized thereby clearly violates the building regulations in such substantial respects as to endanger the public health, safety or welfare. There is no allegation that keeping the two systems entirely separate is not as good and as desirable a mode of construction as connecting them together. That the ordinance does not prescribe how the outlet of the rainwater pipes shall be constructed, except when it connects with the house sewerage system, is not sufficient reason for holding that it must be connected with such system. We are of opinion that the building inspector could properly authorize the construction of a drainage system for roof water wholly separate from the sewerage system of the building, and that the construction here permitted does not differ from the requirements of the building code in any such substantial respect as would justify the court in requiring a revocation of the permit for the erection of the building. It follows that the trial court was correct in holding that the facts alleged would not justify the issuance of the writ.

Judgment affirmed.