[Civ. No. 5777.   Second Appellate District, Division Two.—September 21, 1927.]

R. W. GEORGE et al., Petitioners, v. FRED T. BEATY et al., Respondents.

Anderson & Anderson, Haas & Dunnigan, Noland M. Reid, City Attorney of Long Beach, and Arthur G. Wray, City Attorney of Whittier, for Petitioners.

Everett W. Mattoon, County Counsel, Roy W. Dowds and Hill, Morgan & Bledsoe for Respondents.

James H. Howard and Roy A. Linn, *Amici Curiae.*

THOMPSON, J.—In this original proceeding in *mandamus* the petitioners seek the peremptory writ compelling the respondents, as the board of supervisors of the Los Angeles Flood Control District, to proceed to construct a dam at the San Gabriel Canyon dam site of the height of 425 feet above the bed of the stream with a storage capacity of 240,000 acre-feet of water, or to construct to completion a dam of such height and capacity as can be constructed for the sum of $25,000,000. It is made to appear by the allegations of the petition that at a special election called for that purpose on May 24, 1924, the voters of the Los Angeles Flood Control District authorized bonds in the sum of $25,000,000 for the purpose of constructing a dam at the forks of the San Gabriel River of the height and capacity just mentioned, in accordance with a report of the engineer employed by the board of supervisors to make a report thereon and at the estimated cost of $25,000,000; that on May 18, 1927, the board passed a resolution reciting that subsequent exploration studies had demonstrated that a dam 385 feet high and with a capacity of 180,000 acre-feet would be sufficient, and changed the plans and specifications and adopted plans and specifications for the smaller dam.

From the return of the respondents it appears that subsequent to the issuance and service of the alternative writ the board of supervisors, by resolution passed on August 1, 1927, rescinded the action of May 18, 1927, and ordered ''that the dam in San Gabriel canyon be constructed at the site and of the size and impounding capacity as provided in the report of the chief engineer of said district, adopted April 1, 1924, and for the construction of which bonds were duly and regularly voted by the voters of said district on May 6, 1924, and that the chief engineer of said district be instructed to present plans and specifications to this board for

the construction of a dam in accordance therewith . . . " It is also alleged that the board is "now proceeding as fast as possible to construct to completion a dam at the San Gabriel damsite according to the plans and specifications and of the height and capacity authorized by the voters of said district," and that "they are now expressly and in every detail complying with the command set forth in the alternative writ of mandate in this case." ▮ No allegation of the petition is denied in the return but the respondents make their allegations with the attempted reservation that they neither admit nor deny the averments by petitioners. Therefore all of the material allegations of the petition, in the eyes of the law, stand admitted. As stated by the court in the case of *People* v. *Crabb*, 156 Ill. 155 [40 N. E. 319], which was a proceeding in *mandamus* where a similar effort was made, "The admission of their truth [allegations of the petition] follows as a legal conclusion from the defendants' failure to traverse them, and such conclusion is not obviated by a protestation on the part of the defendants that their truth is not admitted."

▮ With the situation thus clearly before us the sole question is whether the peremptory writ should issue or the petition be dismissed with costs to petitioners. Originally the "writ of *mandamus* was a high prerogative writ issuing in the name of the sovereign power . . . " (*Calaveras County* v. *Brockway*, 30 Cal. 325–336), and with that historical background it would seem the writ could not be invoked except for the accomplishment of some useful purpose. It has accordingly been determined that it will not issue "where it would be of no benefit to the applicant, or to enforce a mere abstract right, unattended by any substantial benefit to the petitioner." (*Spotton* v. *Superior Court*, 177 Cal. 719 [171 Pac. 801].) What would be accomplished in this proceeding by the issuance of the peremptory writ? It is certain that had the resolution of August 1, 1927, preceded the filing of the petition the alternative writ would not have issued. The board of supervisors have taken all action which we might at this time compel them to take and we cannot assume that they will not continue in accordance with their allegations "to construct to completion a dam at the San Gabriel damsite" of the height and capacity determined by the voters. In fact

we are bound to presume, in line with the presumption contained in subsection 15 of section 1963 of the Code of Civil Procedure, "that official duty" will be "regularly performed." ▮▮▮ There is a long line of authorities which hold that the remedy of *mandamus* will not be employed where the respondents show that they are willing to perform the duty without the coercion of the writ. As an example we quote from *People* v. *Dulaney,* 96 Ill. 503–506, a proceeding against the Commission of the Illinois State Penitentiary at Joliet: "As respects the first contract respondents admit its validity and their willingness to perform it, so far as it is practicable for them to do it. Waiving, for the present, the question made as to the jurisdiction of this court to compel the execution of such a contract, there can be no occasion for a writ to compel respondents to do that which they admit, on the record, they are willing to do without coercion. The law will not do a useless thing." And again in *State* v. *Nash,* 134 Minn. 73 [158 N. W. 730], it is said: " '*Mandamus* will not issue to compel the doing of an act which has already been done, or *which the respondent is willing to do without coercion*' 19 Am. & Eng. Ency. 758. Neither will it issue to compel the revocation of a building permit for a defect which has been corrected, or which the parties concerned *are ready and willing to correct.*" (Italics ours.) To the same effect see *State ex rel. Good* v. *Howard,* 174 Ind. 358 [92 N. E. 115] , *American Eng. Co.* v. *Metropolitan By-Products Co.,* 280 Fed. 677 , *St. Louis & S. F. R. Co.* v. *Messenger,* 26 Okl. 590 [110 Pac. 893], and *Double* v. *McQueen,* 96 Mich. 39 [55 N. W. 564]. Counsel for petitioners argue that the board may change its mind in the future and rescind the action of August 1, 1927. The presumption to which we have adverted concerning the performance of official duty answers this contention.

▮▮▮ It must be remembered that by section 15 of the law creating the district (Stats. 1915, p. 1502) it is provided "that any improvements for which bonds are voted under the provisions of this act, shall be made in conformity with the report, plans, specifications and map theretofore adopted . . . unless the doing of any of such work described in said report, shall be prohibited by law, or be rendered contrary to the best interests of said district by some change

of conditions in relation thereto, in which event said board of supervisors may, by a vote of four-fifths of all the members thereof, order necessary changes made in such proposed work or improvements, . . . '' It will be observed that only where the doing of the work is prohibited by law or when by reason of some change of conditions in relation thereto it is not for the best interests of the district, that the board is authorized not to proceed in accordance with the original plans. It will not and cannot be questioned that under the provisions just quoted the duty and authority of determining whether there has been ''a change of conditions in relation'' to the improvements has been cast upon the board by the legislature, and the courts cannot prevent the free and unhampered discharge of that duty. Counsel do not assert that the board has not the right and the duty to change its mind in the event that a ''change of conditions'' actually takes place, but that, regardless of such a change, they might arbitrarily adopt a different policy. We cannot, in a proceeding of this character, indulge in such presumptions, particularly where, as here, conditions may arise where it is their duty to determine in the first instance, at least, that they are authorized by law, by virtue of different conditions actually arising, to adopt a change of plans. We are not justified in endeavoring to control the future action of public officials where their present actions are in line with their duty. Let us suppose that an alternative writ were sought directed to a public board which was proceeding to discharge its duty as enjoined by law; it certainly would not be argued that because the board might change its mind the writ should issue. It is suggested that in the event that the board of supervisors, acting honestly and in a conscientious endeavor to discharge the duty imposed upon it by section 15 of the act of 1915, should determine erroneously that there was a change of conditions occurring subsequent hereto and should cease construction of the dam before it had reached the required height or before the fixed amount of money had been expended, the question should then be tried in a contempt proceeding rather than to require petitioner to institute a new proceeding in *mandamus*. One consideration announced in *State* v. *Public Service Com.*, 44 Nev. 102 [190 Pac. 284], concludes the claim that petitioners are entitled to a peremptory writ, in order that they be not com-

pelled to begin a new proceeding like the instant one, should the respondent board again try to alter the construction plan ordered by the voters.

█ We refer to the principle that *mandamus* is never granted to compel the performance of an act until there has been an actual as distinguished from an anticipated refusal, yet that is the only purpose which a peremptory writ would serve in this proceeding. The rule which limits the use of *mandamus* to compel official action enjoined by law when its performance is refused may enjoin continued vigilance upon the interested taxpayers. However, if it were otherwise courts might be continually called upon to direct and supervise the conduct of public officials vested with ministerial powers. This might occur in any and all instances where an interested petitioner might entertain a doubt as to the official's intention to in good faith perform his legal duty. It is said in *State* v. *Public Service Com., supra,* ''As the writ will not lie against the commission, neither will it go against the company, primarily for the reason that the petition does not show that the company has discontinued its service. Its application to the commission and the order of the latter permitting the discontinuance, afford a strong presumption that it will do so, but as previously stated, the writ of *mandamus* is in no sense a preventative [*sic*] remedy. Its function is to enforce action—to compel the performance of a duty or obligation which is enjoined by law. *Mandamus* is never granted in anticipation of a supposed omission of duty, however strong the presumption may be that the persons whom it is sought to coerce by the writ will refuse to perform their duty when the proper time arrives. High's Extraordinary Legal Remedies (3d ed.), sec. 12.'' And in keeping with this statement is a similar one found in *State* v. *Gracey*, 11 Nev. 223–233: ''It is incumbent on the relator to show, not only that the respondent has failed to perform the required duty, but that the performance thereof is actually due from him at the time of the application.''

█ There exists another very cogent reason why the argument, advanced by petitioner, that the election of new members to the board might cause a change of mind on its part, should have no weight in our consideration of this problem. We read in 16 Cal. Jur. 766, concerning the distinction

between prohibition and *mandamus*, that ''one is prohibitory and the other mandatory; one acts upon the person, the other acts upon the tribunal,'' which language we find approved in *City of- Coronado* v. *San Diego*, 97 Cal. 440 [32 Pac. 518]. Accordingly it has been held that the peremptory writ of mandate does not constitute an enforceable judgment against the successor in office who has not been made a party to the proceeding. (*Ex parte Tinkum*, 54 Cal. 201, and *Bauter* v. *Superior Court*, 6 Cal. App. 195 [91 Pac. 749].) For the purpose of a clearer concept of the original character of the writ of *mandamus* in relation to its command to a person as distinguished from that of an office, we quote from the opinion of Mr. Justice Strong in the case of *United States* v. *Boutwell*, 17 Wall. (U. S.) 604, 21 L. Ed. 721: ''The writ does not reach the office. It cannot be directed to it. It is, therefore, in substance, a personal action, and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance of which by him the relator has a clear right.''

The question then remains whether the peremptory writ should issue, as a matter of course, where there has been compliance with the alternative writ. This has been answered not only by the authorities deciding that it will not issue except to accomplish a useful purpose, but also by those decisions wherein it is held that where the return to the alternative writ shows a compliance therewith, the petition will be dismissed. Such are the cases of *Talmage* v. *Monroe* (Cal. App.), 119 Pac. 526; *Thornton* v. *Hoge*, 84 Cal. 231 [23 Pac. 1112]; *O'Brien* v. *Superior Court*, 189 Cal. 78 [207 Pac. 540]; *Waite* v. *Superior Court*, 35 Cal. App. 330 [169 Pac. 916]; *Grinbaum* v. *Superior Court*, 192 Cal. 783 [221 Pac. 653]. These authorities are based upon the principle that the question originally involved has become moot. By reason of the board's compliance with the alternative writ in this case the question has become moot.

The petitioners, however, upon the authority of *Talmage* v. *Monroe*, *supra*, are entitled to their costs.

The writ is discharged and the proceeding is dismissed, the petitioners to recover their costs herein.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 20, 1927, and an application by petitioners to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 17, 1927.